IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LESLIE J. KEEN,**

        **Plaintiff,**

vs.                                                                                         Civ. No.  02-0926 LH/LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon the Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed November 25, 2002 *(Doc. 14)*.  Defendant filed a Response on January 2, 2003 *(Doc. 16)*.  Plaintiff a Notice of Completion on January 17, 2003 *(Doc. 17)*. The Commissioner of Social Security issued a final decision finding that Plaintiff was not disabled, and thus not entitled to disability insurance benefits.  The parties have each consented to having the United States Magistrate Judge conduct all further proceedings in this matter pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, the Response, the Reply, the memoranda, the administrative record, and the applicable law, finds that Plaintiff's Motion is not well-taken and should be DENIED.

### I.   BACKGROUND

Plaintiff filed her original application for disability insurance benefits on October 13, 2000, alleging that she became disabled on August 15, 2000, due to a broken back in three places,

broken ribs, and a broken nose which occurred in a fall, as well as other physical impairments, and depression.[1]  R. 14.  The Commissioner denied Plaintiff's claim on February 6, 2001.  R. 79.  Plaintiff submitted a request for reconsideration on February 21, 2001.  R. 83.  Upon Plaintiff's request for reconsideration,  Plaintiff's original and additional evidence were reevaluated.  R.85.  The Commissioner found the previous determination denying Plaintiff's claim was proper under the law.  *Id*.  Upon Plaintiff's request, a hearing was scheduled for December 18, 2001.  R. 89, 91, 23.  The Commissioner requested that a Vocational Expert ("VE") give testimony at the hearing. R. 93  An administrative law judge (hereinafter, "ALJ") found Plaintiff was not entitled to a period of disability or Disability Insurance Benefits under Sections 216 (i) and 223 the Social Security Act on February 22, 2002.  R. 21.

Plaintiff thereafter submitted a Request for Review of Hearing Decision/Order on April 22, 2002.  R. 8.  Additional evidence was provided by Plaintiff for consideration by the Appeals Counsel.  R. 7.  On June 27, 2002, the Appeals Council denied Plaintiff's request for review.  R. 5.  The ALJ's decision thus became the final decision of the Commissioner.  *Id*.

On July 30, 2002 Plaintiff commenced this action, seeking judicial review of the Commissioner's decision finding Plaintiff not disabled. Compl. ¶¶ 2-3.  On October 16, 2002, Plaintiff filed a Notice of New Application for benefits *(Doc. 13)*.

---

[1]  Plaintiff further alleged that she was disabled because of headaches, fatigue, a back injury, diabetes, poor memory and depression.  R. 79.  Plaintiff also has a history of gastroesophageal reflux.  *Id*.  Plaintiff's claims of error relate primarily to her mental impairment, which is the focus of this Memorandum Opinion.  *See generally,* Pl. Memo. in Support of Mot. to Remand.

## II. STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits or supplemental security income, a Plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the Plaintiff from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). At the first four levels of the sequential evaluation process, the Plaintiff must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform works he has done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the Plaintiff is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id*.

Plaintiff alleges that the ALJ's opinion is erroneous and not supported by substantial evidence in two respects: first, the ALJ's finding that Plaintiff's mental impairment was not severe; and second, the ALJ's rejection of the testimony of the vocational expert ("VE") suggesting that a person with limitations claimed by Plaintiff could not perform medium level work or maintain employment at the light level jobs identified. *See* Pl. Memo. in Support of Mot. at 3 and 8.

Plaintiff is a high school graduate with one year of additional schooling who worked as a licensed practical nurse ("LPN"). R. 35-36. Plaintiff worked as an LPN from 1983 through 1999, and for seven months of 2000. R. 38. Plaintiff's last day worked was August 15, 2000. *Id*. Plaintiff worked in the day surgery unit for 17 years, and was transferred to Urgent Care in February, 2000. R. 38-39. Plaintiff fell approximately 50 feet on August 8, 1998 and sustained multiple trauma including a fracture of her nose. R. 143. Plaintiff also suffered fractures of her ribs and compression at L1, L2, and L3 in her back. R. 145-46, 151. Plaintiff has had diabetes since 1990. R. 151.

**Plaintiff's Mental Impairment**

In his opinion, the ALJ correctly noted that "[a] medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities." R. 14 (citing 20 C.F.R. § 404.1521). The ALJ also noted that applicable regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. R. at 14 (citing 20 C.F.R. § 404.1523). The ALJ found that Plaintiff had an impairment or combination of impairments considered "severe" pursuant to 20 C.F.R. § 404.1520(b). R.20.

Plaintiff claims that the ALJ should have found that her mental impairment was "severe" pursuant to 20 C.F.R. § 404.1520a (b)(d). Plaintiff claims that she has a moderate impairment in deficiencies in concentration, persistence and pace and in episodes of deterioration or

decompensation in a work-like setting, thus demonstrating a "severe" impairment under 20 C.F.R. § 404.1520a(c)(1). However, the ALJ noted that the record supported the findings of the consultative examiner, Dr. Gonzales, the state agency physicians, Plaintiff's treating physicians, and other mental health consultants that Plaintiff's mental impairment was not severe. R. 15.

The determination of severity at step two of the analysis is governed by the applicable severity regulations. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step two, the ALJ is to determine whether the claimant has an "impairment or combination of impairments which significantly limits [her] . . . ability to do basic work activities." *Hinkle v. Apfel,* 132 F.3d 1349, 1353 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)). This determination is based on medical factors alone, and does not include consideration of vocational factors such as age, education, and work experience. *Williams*, 844 F.2d at 750-51. Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities. *Id*. While the Tenth Circuit has noted that the step 2 severity determination requires a "de minimis" showing of impairment, the claimant must show more than the mere presence of a condition or ailment. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997)(citing *Williams*, 844 F.2d at 751); *see also Hinkle* 132 F.3d at 1352 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)). If a claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *Williams,* 844 F.2d at 751. If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three. *Id*. As such at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on the claimant's ability to work. *Hinkle*, 132 F.3d at 1352.

Pursuant to the Listing of Impairments, in order to meet the listing for Section 12.04

Affective Disorders, the Plaintiff must show both medically documented persistence of depressive syndrome[2] or manic syndrome[3] or bipolar syndrome,[4] which must result in two of the following: marked restriction of the activities of daily living; or marked difficulty maintaining social functioning or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B). Alternatively, the Plaintiff may demonstrate medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following:  repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement.  *Id.*

Plaintiff does not claim that her mental impairment meets the Listing of Impairments. Instead, Plaintiff claims to have at least moderate impairment in concentration, persistence, or

---

[2] Depressive syndrome is characterized by at least four of the following:  anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with change in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or hallucinations, or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 A(1)(a)-(i).

[3] Manic syndrome is characterized by at least three of the following:  hyperactivity; or pressure of speech; or flight of ideas; or inflated self-esteem; or decreased need for sleep; or easy distractability; or involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(2)(a)-(h).

[4] Bipolar syndrome is characterized with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(3).

pace, and in deterioration or episodes of decompensation in work or work-like settings.   Pl. Memo. in Support of Mot. to Remand at 304.

At the time of the hearing before the ALJ, Plaintiff testified that she sometimes "get[s] real upset" and feels sadness. R. 42.  Plaintiff testifies that she takes Zoloft[5] for these feelings, which "work[s] all right" and that although she received psychological treatment in the past, she was not currently under such treatment. R. 42.  Plaintiff testified that she was prescribed Zoloft by her internist. R. 58.

After the hearing before the ALJ, Plaintiff submitted an affidavit for consideration which indicated that "[o]n bad days, I cry a lot and do not function well at all.  On good days, I could probably work at least one-half day."  R. 104.  Plaintiff also stated that there is no pattern as to when she has "bad days."  *Id*.

Plaintiff testified that although she has lower back pain, she can do housework, can walk about four blocks[6], does back exercises, can sit, can stand, can occasionally climb stairs, can reach with her arms over her shoulders, can bend down at least part way.  R. 43-46.  She testified that she goes shopping for groceries, occasionally visits the mall, pays the bills, takes care of her own personal needs, can do yard work with her flowers, drives, can decorate small cakes, can sew in spurts, swims daily during the summer, and takes classes at her church.  R. 47-50. Plaintiff testified that she gets along well with others. R. 51.   In a Daily Activities Questionnaire

---

[5]      Zoloft© or sertraline is in a class of drugs called selective serotonin reuptake inhibitors. Sertraline affects chemicals in the brain that may become unbalanced and cause depression, panic or anxiety, obsessive or compulsive symptoms, or other psychiatric symptoms. Sertraline is used to treat depression, obsessive-compulsive disorder, panic disorder, posttraumatic stress disorder (PTSD), and premenstrual dysphoric disorder (PMDD).  WebMd *at* http://my.webmd.com/content/drugs/3/4046_2178.htm?lastselectedguid={5FE84E90-BC77-4056-A91C-9531713CA348}(April 16, 2003).

[6]      *Compare* with R. 119, wherein Plaintiff indicated that she walks one mile a couple of times a week.

completed for the New Mexico Disability Determination Service, Plaintiff indicated that she usually gets along very well with people in authority, although she "sometimes can get a little nervous around doctors." R. 120.

     A review of the record indicates that after her traumatic fall, Plaintiff recovered and returned to work. Immediately after her injury, Plaintiff was treated by Michael Woods, M.D., of Albuquerque Orthopedic Care, for her back problems. R. 171-181. Dr. Woods indicated in his notes of August 31, 1998, that Plaintiff would likely be out of work for three months. R. 181. However, on September 17, 1998, Dr. Woods noted that Plaintiff could return to work on a light duty, part-time basis. R. 178. After an examination on October 19, 1998, Dr. Woods noted that Plaintiff should be able to function at work by early November 1998, as long as she would avoid heavy bending, twisting, or lifting of patients. R. 177. By November 5, 1998, Dr. Woods noted that Plaintiff could return to work, starting with half days, with a restriction on lifting over 20 pounds. R. 176. Dr. Woods reported that Plaintiff could return to work for full days on December 17, 1998, with a 20 pound restriction on lifting. R. 174. Dr. Woods noted that Plaintiff could continue working with a restriction of 35 pounds on lifting on February 4, 1999. R. 173.

     Plaintiff was cleared to return to work on November 13, 1998, with a restriction on lifting, pushing or pulling of over 20 pounds, no repeated squatting or kneeling, and no frequent bending or stooping, by Richard Currey, PA-C, of the Presbyterian Occupational Medicine Clinic. R. 195. On December 18, 1998, Plaintiff was evaluated by Robert Paul Vitek, M.D., M.P.H., Associate Medical Director of the Presbyterian Occupational Medicine Clinic. R. 192-94. Dr. Vitek recommended that Plaintiff could return to work with patient care for four hours, but could do other activities for the rest of the eight hour work day. *Id.* Plaintiff was cleared to go back to work with a 35 pound lifting restriction and a 35 pound push/pull restriction on February 4, 1999. R. 189-191.

Plaintiff testified that when she initially returned to work, she was able to do paperwork. R. 56. Plaintiff stated that she "was told by the Urgent Care Manager I was no longer needed there. They say they don't think I'm processing correctly because of an IV I put facing downward during a time when blood sugars were over 300." R. 120. Plaintiff was referred to the Presbyterian Occupational Medicine Clinic for a fitness for duty evaluation.

Plaintiff testified that upon her return to work, she had problems remembering, and problems processing and learning new skills. R. 40 and 38. She also testified that she had difficulty in learning the sequence for sterilization of instruments when she worked at Urgent Care. R. 41. When asked about "jobs that wouldn't be quite so detailed and something simpler," Plaintiff responded "I just don't think so. I have like, I don't sit long periods of time." R. 41.

After her return to work, Plaintiff was referred for a Fitness for Duty Evaluation by her supervisor, and was evaluated by William I. Christensen, M.D., M.P.H., the Medical Director of the Presbyterian Occupational Medicine Clinic. R. 186. Dr. Christensen evaluated Plaintiff on August 15, 2000, and in his resulting report noted that Plaintiff "has usually been quite dependable, but has had difficulty functioning over the last couple of weeks. In fact, she recently started an intravenous catheter aiming peripherally rather than centrally and does not recall why she did it." R. 186. Dr. Christensen reported that Plaintiff had had blood sugars running as high as 178 to more than 300, and that Plaintiff stated that she was having "marked difficulty adjusting to 12 hours shifts." *Id*. Dr. Christensen recommended that Plaintiff work only eight hour shifts, and that Plaintiff return for a follow up in approximately one month. *Id*. Dr. Christensen did not recommend any other restrictions. R. 186-87.

Dr. Christensen performed a follow-up evaluation on Plaintiff on September 18, 2000. In his resulting report, Dr. Christensen noted that Plaintiff "had previously been seen on 08/15/00, at which time her diabetes was out of control and she was having some difficulty concentrating on her work." R. 184. Dr. Christensen noted that at that time, Plaintiff's diabetes "is now under

9

control and she feels much more alert . . ." *Id*. Dr. Christensen concluded that Plaintiff "may return to work without restrictions. No follow up appointment has been made." R. 184-85. Plaintiff was thus released back to work without restrictions on September 18, 2000, less than a month before she filed her original application for disability insurance benefits on October 13, 2000. R. 185, 14..

      A psychiatric evaluation was performed on Plaintiff on January 24, 2001 by Rene Gonzales, M.D. R. 207. Dr. Gonzales reported that Plaintiff stated that she had difficulties at work and was terminated. *Id*. Dr. Gonzales stated that Plaintiff described herself as "feeling very depressed, very anxious, feeling hopeless and helpless, [with] low self-esteem." *Id*. Dr. Gonzales noted that Plaintiff had been prescribed Zoloft by her primary care physician, and that Plaintiff stated that she saw a psychologist for three visits in November 1998, but hadn't seen a psychologist, counselor or therapist since then. *Id*. In describing his Mental Status Examination, Dr. Gonzales reported that Plaintiff was coherent, that her mood appeared to be sad and depressed, that thinking form and progression appeared to be normal, that concentration and attention appeared to be mildly impaired, that Plaintiff appeared to be alert and oriented to person, place, time and situation, and that Plaintiff's immediate, recent and remote memory appeared to be intact. R. 208. Dr. Gonzales diagnosed Plaintiff with major depression, recurrent episode on Axis I[7]; deferred diagnosis on Axis II; diabetes, bladder, and stomach problems as well as some back pain on Axis III; moderate on Axis IV; and on Axis V, opined that Plaintiff had a GAF of 54[8] at the present time, and of 65 during the past year. *Id*. Dr. Gonzales concluded that Plaintiff

---

      [7]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 25-30, (4th ed. 1994).

      [8]     The GAF rates the client's "psychological, social, and occupational functioning." *See supra n. 13* at 30. The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *Id*. at

"is able to take care of her basic activities of daily living and manage her own financial affairs." R. 209. Dr. Gonzales further concluded that Plaintiff had no limitations in understanding or remembering detailed or complex instructions or very short and simple instructions. R. 209. Dr. Gonzales found that Plaintiff had no limitations in sustained concentration and task persistence, ability to carry out instructions and ability to work without supervision. *Id.* Dr. Gonzales also found no limitations on Plaintiff's social interaction or ability to interact with the public, coworkers, and supervisors, and no limitations on Plaintiff's ability to adapt to changes in the workplace, ability to be aware of normal hassles and react appropriate and ability to use public transportation or travel to familiar places. *Id.* Dr. Gonzales found that Plaintiff had "mild limitations" on her ability to attend and concentrate.[9] *Id.* Dr. Gonzales recommended that Plaintiff participate in therapy, and noted that Plaintiff stated "that she is not able to hold a job because of her multiple physical problems." R. 209.

The progress notes of John A. Seibel, M.D., Plaintiff's treating physician, indicate that Plaintiff reported depression to him on January 5, 1998 (for which Plaintiff was prescribed Zoloft), February 23, 1998, May 26, 1998, August 24, 1998, and September 4, 1998, R. 150-61 Dr. Seibel's notes indicate that although Plaintiff reported depression, she was oriented to time and place, and noted no problems with recent or long-term memory. R. 150..

The ALJ noted at the hearing that Plaintiff was alert and was responsive, and noted that Plaintiff's language "was great" and that she was logical. R. 61. In her Daily Activities

---

32.

[9] Plaintiff argues that the ALJ erred in not eliciting additional information regarding the apparent disparity between Plaintiff's GAF rating of 54 by Dr. Gonzales and her functioning level. Nevertheless, it is apparent that Plaintiff's own testimony demonstrates that she does not have difficulty in her social functioning. *See, e.g.,* R. 51, 120. Moreover, the information provided by Dr. Gonzales, as well as by Plaintiff's treating physicians, do not indicate marked difficulty in psychological functioning. As further discussed later in this Memorandum Opinion and Order, the ALJ met his burden and adequately developed the record.

Questionnaire, Plaintiff similarly noted that she does some housework, is able to take care of her personal needs, does her own shopping, has no trouble making selections or paying for them when shopping, prepares meals, drives a car, handles her own bills, and has no problems getting along with family friends, neighbors, etc.  R. 123-24.

The ALJ found that these facts did not demonstrate any difficulty maintaining social functioning, and nor was there evidence of any episodes of decompensation of sufficient severity to demonstrate moderate impairment.  *See generally*, 20 C.F.R. Part. 404, Subpt. P, App. 1, §§ 12.00 (C)(4).  The Consultative Examiner found that Plaintiff had only "mild limitations" on her ability to attend and concentrate. R. 209.  In addition, the Consultative Examiner found no limitations on Plaintiff's sustained concentration and task persistence, ability to carry out instructions and ability to work without supervision. R. 209.  Plaintiff argues that "there is uncontroverted evidence that Ms. Keen's ability to focus, concentrate and attend to tasks for a sufficient amount of time to master them has been impaired to a degree that would affect her ability to work."  Pl. Memo. in Support of Mot. to Remand at 4.   However, in addition to the findings of the CE that Plaintiff had only mild limitations in sustained concentration and task persistence, Dr. Christensen, in his follow up to Plaintiff's Fitness for Duty Evaluation,  noted Plaintiff's diabetes "is now under control and she feels much more alert . . ."   and concluded that Plaintiff "may return to work without restrictions.  No follow up appointment has been made."  R. 184-85.

Although Plaintiff testified that she sometimes "get[s] real upset" and feels sadness and that she was prescribed Zoloft by her internist for these feelings, which "work[s] all right" (R. 42, 58), the record demonstrates that Plaintiff has not received psychological treatment or therapy for these feelings. R. 58, 209.  The medical records of Plaintiff's treating physicians also do not contain any information to suggest that Plaintiff's mental impairment significantly limited Plaintiff's ability to do basic work activities. *See*, *e.g.,* R. 150-161, 184-185.  The ALJ properly

made his determination of severity on medical factors. *Williams*, 844 F.2d at 750-51.  Pursuant to the severity  regulations, the Plaintiff has failed to make the necessary threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities. *Id*.

In addition, although Plaintiff only claims that the ALJ should have found her mental impairment "severe," it is apparent from the record that the ALJ properly considered Plaintiff's mental impairment with her other impairments. 20 C.F.R. § 404.1523. The ALJ's finding that Plaintiff's mental impairment was not severe is thus supported by substantial evidence and in accord with applicable regulations. *See* 20 C.F.R. § 404.1520a.

The Plaintiff claims that the ALJ failed to adequately develop the record.   The burden to prove disability in a social security case is on the Plaintiff. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). However, because a Social Security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993).  As such, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The degree of effort required by the ALJ to develop the record varies from case to case. Cf. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed record must be determined on case by case basis); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983).

The Plaintiff "has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the Plaintiff has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative exam.  *Hawkins v. Chater*, 113 F.3d at 1166-67.  The ALJ is not required to

exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. *Hawkins*, 113 F.3d at 1168 (citing generally, *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)).  The applicable standard is that "of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly developing the record as to material issues.'" *Hawkins*, 113 F.3d at 1168 (citing *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).

In the instant case, a psychological evaluation of Plaintiff was undertaken by the Consultative Examiner, Dr. Gonzales.  R. 207-09.  The ALJ carefully considered the opinion of Dr. Gonzales, as well as those of Plaintiff's other physicians. Plaintiff argues that the ALJ improperly failed to consider the evaluation of Diane McKenzie, MS., CCC-SLP, a Speech/Language Pathologist.  However, the ALJ properly found that Ms. McKenzie was not an acceptable medical source under 20 C.F.R. § 404.1523.  R. 15.  As the ALJ noted, 20 C.F.R. § 404.1513(a) provides that qualified speech-language pathologists can be considered acceptable medical sources only for the purposes of establishing speech language impairments.  R. 15.  The ALJ properly characterized the Communicative/Cognitive Evaluation Report of Ms. McKenzie as dealing with "detecting memory deficits rather than speech or language pathology."  R. 15.  *See, e.g.,* Pl. Memo. In Support of Mot. to Remand at 6 (wherein Plaintiff argued that Ms. McKenzie noted that Plaintiff had difficulty on four subtests of the Weschler Memory Scale Form II, and further argued that "[h]er performance on the Attention Processing Training Test was abysmal."). The ALJ specifically noted the results of the Weschler test "reveals a score of 114, which is considered within the normal limits."  R. 15.  The ALJ correctly concluded that "[g]iven the fact that Ms. McKenzie is not an acceptable medical source for performing intelligence or memory tests and the fact that overall test results in these areas are within normal limits, very little evidentiary weight can be given to [Ms. McKenzie's report].  Under the Social Security Regulations, Ms. McKenzie is not considered qualified to make delineation on subtests on memory or intelligence testing." R. 15. Plaintiff's allegation that the ALJ's decision to give little

evidentiary weight to Ms. McKenzie's report was legal error is without merit. *See* 20 C.F.R. § 404.1513.  The ALJ did not "ignore" Ms. McKenzie's report as alleged by Plaintiff.  It is apparent that the ALJ considered Ms. McKenzie's report, as well as the medical records and testimony of the Plaintiff, in making his determination.  The ALJ thus exercised reasonable good judgment and adequately developed the record.  *See generally, Hawkins*, 113 F.3d at 1168.

**Reliance Upon the Testimony of the VE**

Plaintiff makes a two-fold argument about the reliance by the ALJ on testimony provided by the VE.  Pl. Memo. in Support of Mot. to Remand at 8.  Plaintiff argues that the ALJ erred in accepting testimony by the VE that a person with Plaintiff's limitations could do medium level work.  Plaintiff also argues that the ALJ should have accepted additional testimony by the VE regarding the inability of a person with limitations claimed by Plaintiff to maintain employment in the light work jobs identified by the VE.  *Id*.

At the time of the hearing, the VE noted that Plaintiff's past work as a licensed practical nurse is classified as medium work, although "the way she performed it and the way it's performed it's heavy to very heavy."  R. 65.  Plaintiff argues that the ALJ's finding that Plaintiff can perform medium level work is unsupported in the evidence.  However, when Dr. Christensen released Plaintiff to work on September 15, 2000, he did so with no restrictions.  The previous reports indicating limitations on Plaintiff all predated Dr. Christensen's evaluation.  Although Plaintiff did report on a Daily Activities Questionnaire that she has difficulty lifting more than 35 pounds,  previous limitations on lifting over 35 pounds were not adopted by Dr. Christensen in his follow-up to the fitness for duty evaluation.  Plaintiff's physician released her without restriction to her previous work, which the VE described as "heavy to very heavy" in the way that it is performed. R. 65.  Therefore, the ALJ's finding that Plaintiff could do medium level work is not "unsupported in the evidence" as alleged by Plaintiff, and is, in fact, supported by substantial evidence.  The ALJ did not err in finding that Plaintiff is able to do medium level work.

Plaintiff also argues that the ALJ should have accepted the testimony of the VE that a person with Plaintiff's qualifications, vocational background, and age, with Plaintiff's past relevant work, and limitations such as those claimed by Plaintiff (i.e., the person worked at a slower pace than normal and had problems with focusing and concentration), would have difficulty maintaining the two light work jobs identified by the VE, file clerk and personal care attendant. R. 71. Plaintiff also argues that the ALJ should have accepted the testimony of the VE that if such a person were easily distracted and unable to focus, she would not be able to maintain employment as a file clerk or personal attendant. R. 72.

The ALJ need only accept the testimony of the VE insofar as it incorporates the limitations which he accepts. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000). The ALJ accepted Dr. Gonzales' opinion that Plaintiff was only mildly impaired in concentration and attention. R. 15. The ALJ accepted Dr. Gonzales' opinion, and the evidence in the record suggesting that Plaintiff had no other limitations. The testimony of the VE accepted by the ALJ reflected the impairment which the ALJ found that Plaintiff did indeed have. Therefore, the ALJ did not err in refusing to accept testimony by the VE which incorporated limitations which the ALJ found that the Plaintiff did not have.

The decision of the ALJ to accept the testimony of the VE insofar as it suggested that Plaintiff could do medium level work is supported by substantial evidence in the record. In addition, the ALJ was not required to accept the testimony of the VE which incorporated limitations into the hypothetical which did not reflect those limitations that the ALJ found the Plaintiff to have. The decision of the ALJ is thus supported by substantial evidence and is not overwhelmed by other evidence in the record. *See Gossett*, 862 F.2d at 805. Moreover, the correct legal standards were applied. *See Shepherd*, 184 F.3d at 1199.

### III.    CONCLUSION

I find that Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed July 8, 2002 *(Doc. 10*) is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed July 8, 2002 *(Doc. 10)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**